UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
ALICIA FLORES CANDIA, JUAN MARTINEZ HERNANDEZ, HARLEY DIAZ, OSCAR MONTER and JENNIFER PAVIA, on behalf of themselves, individually, and all similarly situated persons,

Plaintiffs,

-against-

45 STONE STREET VENTURE LTD. d/b/a HAVANA SOCIAL and THE DUBLINER, MAYCOL MARTINEZ CRUZ a/k/a MIGUEL MARTINEZ CRUZ, RONAN A. DOWNS, DAVID J. MASSEY, EAMONN MASSEY and NOEL MCDERMOTT,

Defendants.
---------------------------------------------------------------------X

**AMENDED COMPLAINT**

*Class and Collective Action*

Plaintiffs, Alicia Flores Candia, Juan Martinez Hernandez, Harley Diaz, Oscar Monter and Jennifer Pavia, on behalf of themselves, individually, and all other similarly situated persons, by and through their counsel, the Romero Law Group PLLC, complaining of the Defendants, 45 Stone Street Venture Ltd. d/b/a Havana Social and The Dubliner, Maycol Martinez Cruz a/k/a Miguel Martinez Cruz, Ronan A. Downs, David J. Massey, Eamonn Massey and Noel McDermott (collectively as "Defendants"), allege as follows:

## NATURE OF THE CLAIM

1. Plaintiffs bring this action to recover unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law, Articles 6 and 19, § 650 *et seq.*, and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. § 146 ("NYLL"), unpaid minimum wages under the NYLL, unpaid wages at her agreed upon rate of pay under the NYLL, unpaid spread of hours compensation under the NYLL and 12 N.Y.C.R.R.

§ 146-1.6, unlawfully retained tips and gratuities under the FLSA and NYLL, unlawful deductions from their wages earned under NYLL § 193, damages for failure to furnish accurate wage statements for each pay period under NYLL § 195(3), damages for failure to provide a compliant wage notice upon their hire under NYLL § 195(1), for unjust enrichment, quantum meruit and conversion under New York common law, and any other claim(s) that can be inferred from the facts set forth herein.

2. Plaintiffs bring this lawsuit against the Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of themselves, individually, and on behalf of all other similarly-situated persons during the applicable FLSA limitations period who suffered damages as a result of the Defendants' willful violations of the FLSA. Plaintiffs brings their claims under the NYLL and New York common law on behalf of themselves, individually, and on behalf of any FLSA Collective Action Plaintiff, as that term is defined below, who opts-in to this action.

3. Plaintiffs also bring this lawsuit as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves, individually, and on behalf of all other persons similarly-situated during the applicable limitations periods who suffered damages as a result of the Defendants' violations of the NYLL and the supporting New York State Department of Labor regulations and violations of New York common law.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under 29 U.S.C. § 201, *et seq*. and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred within the Southern District of New York.

## THE PARTIES

6. Plaintiff Alicia Flores Candia ("Flores") is a resident of the State of New York.

7. At all relevant times, Plaintiff Flores was an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e) and NYLL § 190(2), (4).

8. Plaintiff Juan Martinez Hernandez ("Martinez") is a resident of the State of New York.

9. At all relevant times, Plaintiff Martinez was an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e) and NYLL § 190(2), (4).

10. Plaintiff Harley Diaz ("Diaz") is a resident of the State of New York.

11. At all relevant times, Plaintiff Diaz was an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e) and NYLL § 190(2), (4).

12. Plaintiff Oscar Monter ("Monter") is a resident of the State of Connecticut.

13. At all relevant times, Plaintiff Monter was an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e) and NYLL § 190(2), (4).

14. Plaintiff Jennifer Pavia ("Pavia") is a resident of the State of New York.

15. At all relevant times, Plaintiff Pavia was an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e) and NYLL § 190(2), (4).

16. At all relevant times, Defendant 45 Stone Street Venture Ltd. d/b/a Havana Social and The Dubliner is and was a domestic business corporation with its principal place of business at 45 Stone Street, New York, New York 10004.

17. At all relevant times, Defendant 45 Stone Street Venture Ltd. was subject to the requirements of the FLSA because, upon information and belief, it had annual gross revenue of at least $500,000, was engaged in interstate commerce and had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, including but not limited to use of food and ingredients, kitchenware, utensils, cleaning supplies, office supplies, receipt papers, pens, and paper, all of which undoubtably traveled in interstate commerce, and accepted payment from credit card machines and other moneys that originate from out of New York State.

18. At all relevant times, Defendant 45 Stone Street Venture Ltd. was and is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d), NYLL § 190(3).

19. At all relevant times, Defendant 45 Stone Street Venture Ltd. employed more than eleven employees at any given time.

20. From the beginning of the statutory period until on or about April 9, 2023, Defendants 45 Stone Street Venture Ltd. was operated by Defendants as a restaurant and bar while doing business as The Dubliner.

21. Beginning on or about April 10, 2023, Defendant 45 Stone Street Venture Ltd. was rebranded by Defendants as a restaurant and bar doing business as Havana Social and created a new menu for their patrons.

22. Throughout the statutory period, both before and after changing the doing business as name, Defendant 45 Stone Street Venture Ltd. otherwise continued operating in the same manner with the same business model, other than its changed menu.

23. Throughout the statutory period, both before and after changing the doing business as name, Defendants operated the restaurant and bar under the same corporate entity of 45 Stone Street Venture Ltd.

24. Throughout the statutory period, both before and after changing the doing business as name, Defendants operated the restaurant and bar at the same location, catered to the same or similar clientele, and continued to employ the same or similar staff, other than ordinary turnover of employees.

25. Throughout the statutory period, both before and after changing the doing business as name, Defendants maintained the same employee compensation practices, including but not limited to its practices relating to recording hours, payment of wages, overtime wages, spread of hours compensation, tipped employees' wages, tip and gratuities practices, and other wage and hour practices, for their employees at Defendants' restaurant and bar.

26. Throughout the statutory period, both before and after changing the doing business as name, Defendants operated the restaurant and bar as same business, other than utilizing a rebranded doing business as name and updated menu.

27. Beginning in or about 2023 and at all times relevant thereafter, Defendant Maycol Martinez Cruz a/k/a Miguel Martinez Cruz ("Martinez Cruz") was an owner and/or officer for Defendant 45 Stone Street Venture Ltd., as well as a manager for the corporate defendant, was active in the day to day management of the corporate defendant, including directing Plaintiffs and other employees regarding their duties, being responsible for the payment of Plaintiffs' and other employees' wages, determining what wages were paid to Plaintiffs and other employees, had and frequently exercised the power to hire, fire and discipline employees, had authority to make all personnel decisions for all employees, was responsible for maintaining personnel records relating

to Plaintiffs' and other employees' employment, and is liable to Plaintiffs and the other employees as an "employer" within the meaning of the FLSA and NYLL.

28. At all times relevant, Defendant Ronan A. Downs was an owner and/or officer for Defendant 45 Stone Street Venture Ltd., as well as a manager for the corporate defendant, was active in the day to day management of the corporate defendant, including directing Plaintiffs and other employees regarding their duties, being responsible for the payment of Plaintiffs' and other employees' wages, determining what wages were paid to Plaintiffs and other employees, had the power to hire, fire and discipline employees, had authority to make all personnel decisions for all employees, and exercised this authority to terminate Plaintiff Diaz's employment, was responsible for maintaining personnel records relating to Plaintiffs' and other employees' employment, and is liable to Plaintiffs and the other employees as an "employer" within the meaning of the FLSA and NYLL.

29. At all times relevant, Defendant David J. Massey was an owner and/or officer for Defendant 45 Stone Street Venture Ltd., as well as a manager for the corporate defendant, was active in the day to day management of the corporate defendant, including directing Plaintiffs and other employees regarding their duties, being responsible for the payment of Plaintiffs' and other employees' wages, determining what wages were paid to Plaintiffs and other employees, had the power to hire, fire and discipline employees, had authority to make all personnel decisions for all employees, was responsible for maintaining personnel records relating to Plaintiffs' and other employees' employment, and is liable to Plaintiffs and the other employees as an "employer" within the meaning of the FLSA and NYLL.

30. At all times relevant, Defendant Eamonn Massey was an owner and/or officer for Defendant 45 Stone Street Venture Ltd., as well as a manager for the corporate defendant, was

active in the day to day management of the corporate defendant, including directing Plaintiffs and other employees regarding their duties, being responsible for the payment of Plaintiffs' and other employees' wages, determining what wages were paid to Plaintiffs and other employees, had the power to hire, fire and discipline employees, had authority to make all personnel decisions for all employees, was responsible for maintaining personnel records relating to Plaintiffs' and other employees' employment, and is liable to Plaintiffs and the other employees as an "employer" within the meaning of the FLSA and NYLL.

31. At all times relevant, Defendant Noel McDermott was an owner, officer and/or chief executive officer for Defendant 45 Stone Street Venture Ltd., as well as a manager for the corporate defendant, was active in the day to day management of the corporate defendant, including directing Plaintiffs and other employees regarding their duties, being responsible for the payment of Plaintiffs' and other employees' wages, determining what wages were paid to Plaintiffs and other employees, had the power to hire, fire and discipline employees, had authority to make all personnel decisions for all employees, was responsible for maintaining personnel records relating to Plaintiffs' and other employees' employment, and is liable to Plaintiffs and the other employees as an "employer" within the meaning of the FLSA and NYLL.

## FACTS

32. Defendants are a company and its owners that operate a restaurant and bar, located at 45 Stone Street, New York, New York 10004.

33. Defendants employed Plaintiff Flores from in or about 2021 until on or about July 16, 2025.

34. Defendants employed Plaintiff Flores as a non-exempt dishwasher from in or about 2021 until in or about 2022.

35. While employed as a dishwasher, Plaintiff Flores was primarily responsible for, *inter alia*, cleaning and washing dishes, running food orders, cleaning tables and cleaning the bar area.

36. Defendants employed Plaintiff Flores as a non-exempt cook from in or about 2022 until on or about July 16, 2025.

37. While employed as a cook, Plaintiff Flores was primarily responsible for, *inter alia*, cooking, preparing food and ingredients, washing silverware, and cleaning the kitchen areas.

38. Throughout much of her employment, Plaintiff Flores was required to work more than forty hours during her workweeks.

39. For instance, from in or about April 2023 through in or about July 2025, Defendants typically required Plaintiff Flores to work five to six days per workweek.

40. During this period from in or about April 2023 through in or about July 2025, Plaintiff Flores typically worked more than forty hours – and routinely worked between 43 to 47 hours, though sometimes even more hours – during at least three workweeks per month.

41. Beginning from in or about April 2023 through in or about July 2025, Defendant Martinez Cruz periodically required Plaintiff Flores to continue working off the clock after her shift ended to cook him a meal for himself. In these instances, Defendant Martinez Cruz threatened to discipline Plaintiff Flores if she did not remain after her shift concluded to cook his meal. Despite this, Plaintiff Flores did not receive any compensation at any rate of pay for these hours worked, in violation of the FLSA, NYLL and New York common law.

42. Throughout her employment, Plaintiff Flores was required to work more than ten hours during her workday on Fridays from the start to the end of her shift.

43. Throughout her employment, for this work, Defendants paid Plaintiff Flores a straight-time, regular hourly rate of pay for all of her hours worked, including her hours worked in excess of forty hours, at least for those hours that Plaintiff Flores received any compensation.

44. Throughout her employment, Defendants often failed to pay Plaintiff Flores at any rate of pay for several of her hours worked during each of her workweeks, especially during workweeks where she worked more than forty hours, thereby failing to pay her at the applicable minimum wage rate, her agreed upon rates of pay, or her overtime rates of pay for those hours worked, in violation of the FLSA, NYLL, NYLL § 193 and New York common law.

45. Despite being required to regularly work in excess of forty hours during her workweeks, Defendants failed to pay Plaintiff Flores wages at her overtime rate of pay of one and one-half times the applicable minimum wage rate or her proper regular hourly rate of pay, whichever is greater, for her hours worked in excess of forty per workweek, in violation of the FLSA and NYLL.

46. Defendants employed Plaintiff Martinez from in or about September 2022 until in or about September 2024.

47. Defendants employed Plaintiff Martinez as a food runner and busboy from in or about September 2022 until in or about December 2022 or January 2023.

48. Defendants employed Plaintiff Martinez as a non-exempt bartender and server from in or about December 2022 or January 2023 until in or about September 2024.

49. Defendants employed Plaintiff Diaz from in or about April 2023 until in or about June 2025 as a non-exempt bartender and server.

50. Defendants employed Plaintiff Monter from in or about January 2024 until in or about December 2024 as a non-exempt busser.

51. Defendants employed Plaintiff Pavia from in or about April 2023 until in or about June 2024 as a non-exempt bartender and server.

52. From in or about September 2022 through in or about July 2024, Plaintiff Martinez typically worked on Tuesday and Wednesday from 5:00 p.m. until 12:00 a.m., and on Thursday through Sunday from 5:00 p.m. until between 2:00 a.m. and 3:00 a.m., and sometimes even more hours, during his workweeks.

53. During this period from in or about September 2022 through in or about July 2024, Plaintiff Martinez typically worked more than forty hours – and typically worked between at least 50 to 54 hours, though sometimes even more hours – during his workweeks.

54. During in or about August 2024 through in or about September 2024, Plaintiff Martinez regularly worked varying shifts, but typically worked on Thursday from 5:00 p.m. until between 9:00 p.m. and 2:30 a.m., on Friday from 4:00 p.m. until between 9:00 p.m. and 2:00 a.m. and on Saturday from 5:00 p.m. until between 9:00 p.m. and 3:00 a.m., and sometimes even more hours, during his workweeks.

55. Throughout his employment, Plaintiff Martinez was required, as needed, to work one or more double shifts during some of his workweeks, during which Plaintiff Martinez would typically work from 10:00 a.m. until between 1:00 a.m. and 2:00 a.m., or sometimes even more hours, during these workdays.

56. Throughout his employment, and particularly during the period of in or about September 2022 through in or about July 2024 or when he was required to work one or more double shifts, Plaintiff Martinez frequently worked more than forty hours during many of his workweeks.

57. From in or about April 2023 until in or about late-2024, Plaintiff Diaz regularly worked on Sunday and Monday from 10:30 a.m. until between 11:00 p.m. and 12:00 a.m. and on Tuesday from 4:00 p.m. until between 9:00 p.m. and 11:00 p.m., and sometimes even more hours, during his workweeks.

58. From in or about late-2024 until in or about June 2025, Plaintiff Diaz regularly worked on Tuesday and Wednesday from 11:00 a.m. until 5:00 p.m. or on Wednesday and Thursday from 11:00 a.m. until 5:00 p.m., and sometimes even more hours, during his workweeks.

59. Throughout his employment, Plaintiff Diaz was repeatedly required, particularly during weeks with holidays or other special events, to work far more hours during his workweeks, including in excess of forty hours during certain workweeks.

60. Throughout his employment, Plaintiff Diaz was required, as needed, to work one to two, or sometimes even more, double shifts during some of his workweeks, during which Plaintiff Diaz would typically work up to 17 hours during these workdays.

61. Throughout his employment, and particularly during workweeks with holidays or other special events, or when he was required to work one or more double shifts, Plaintiff Diaz worked more than forty hours during certain workweeks.

62. During in or about January 2024 through in or about August 2024, Plaintiff Monter regularly worked five to six days per workweek and typically worked from 11:00 a.m. until between 9:00 p.m. or 10:00 p.m., and sometimes even more hours, during his workweeks.

63. During this period from in or about January 2024 through in or about August 2024, Plaintiff Monter typically worked more than forty hours – and typically worked between at least 50 to 66 hours, though sometimes even more hours – during his workweeks.

64. During in or about August 2024 through in or about October 2024, Plaintiff Monter regularly worked five days per workweek and typically worked from 11:00 a.m. until 4:00 p.m., and sometimes even more hours, during his workweeks.

65. During in or about October 2024 through in or about December 2024, Plaintiff Monter typically worked on Monday from 11:00 a.m. until 7:00 p.m. and on Tuesday from 11:00 a.m. until 8:00 p.m., and sometimes even more hours, during his workweeks.

66. Throughout his employment, Plaintiff Monter was required, as needed, to work one or more double shifts during some of his workweeks, during which Plaintiff Monter would typically work from 11:00 a.m. until 10:00 p.m., or sometimes even more hours, during these workdays.

67. During his employment, and particularly during the period of in or about January 2024 through in or about August 2024, Plaintiff Monter worked more than forty hours during many of his workweeks.

68. From in or about April 2023 until in or about late-May 2024, Plaintiff Pavia regularly worked on Wednesday from 4:00 p.m. until 11:00 p.m., Thursday from 4:00 p.m. until 12:00 a.m., and Friday, Saturday and Sunday from 4:00 p.m. until 2:00 a.m., and sometimes even more hours, during her workweeks.

69. During this period from in or about April 2023 until in or about late-May 2024, Plaintiff Pavia typically worked more than forty hours – and typically worked at least 45 hours, though sometimes even more hours – during her workweeks.

70. From in or about late-May 2024 until in or about mid-June 2024, Plaintiff Pavia regularly worked a reduced worked work schedule during her workweeks.

71. In or about mid-June 2024, Defendants inexplicably removed Plaintiff Pavia from Defendants' work schedules.

72. Throughout her employment, Defendants, typically through Defendant Martinez Cruz, instructed Plaintiff Pavia when her shifts ended on a daily basis and she could not leave until Defendant Martinez Cruz gave her permission to conclude her shift. As a result, throughout her employment, Defendants commonly required Plaintiff Pavia to work additional hours beyond her scheduled hours as Defendants did not give her permission to conclude her shift until after her scheduled hours, and causing her work more than ten hours during many of her shifts.

73. Throughout her employment, Plaintiff Pavia was required, as needed, to work one or more double shifts during some of her workweeks, during which Plaintiff Pavia would typically work from 12:00 p.m. until between 11:00 p.m. and 2:00 a.m., or sometimes even more hours, during these workdays.

74. Throughout her employment, Plaintiff Pavia commonly received a break of one to two hours between the lunch and dinner shifts when she worked a double shift.

75. Throughout her employment, and particularly during the period of in or about April 2023 until in or about late-May 2024, Plaintiff Pavia frequently worked more than forty hours during many of her workweeks.

76. Throughout their employment, Defendants paid Plaintiffs Martinez, Diaz, Monter and Pavia an hourly rate of pay.

77. Throughout their employment, Defendants took a tip credit deduction for each hour that Plaintiffs Martinez, Diaz, Monter and Pavia worked and consequently paid them at reduced hourly rates of pay below the applicable NYLL minimum wage rates and overtime rates as tipped employees.

78. Throughout their employment, Defendants failed to provide Plaintiffs Martinez, Diaz, Monter and Pavia with compliant written notices under the NYLL that Defendants were claiming a tip credit toward the statutory minimum wage for her hours paid at a tipped rate.

79. However, at times during their employment, Defendants paid Plaintiffs Martinez, Diaz, and Pavia at reduced tipped hourly rates of pay that were even below the applicable NYLL tipped minimum wage rates and tipped overtime rates, as used for circumstances where tipped rates are permissible, and thereby failed to pay Plaintiffs Martinez, Diaz, and Pavia lawful minimum wages and overtime wages in violation of the NYLL.

80. Throughout their employment, Defendants paid Plaintiffs Martinez, Diaz, Monter and Pavia pursuant to a tip pool arrangement wherein tips and gratuities received from patrons were distributed equally to Plaintiffs Martinez, Diaz, Monter and Pavia and other tipped employees, including, *inter alia*, bartenders, servers, food runners, and busboys.

81. Beginning in or about 2023 and thereafter, Defendant Martinez Cruz was directly responsible for collecting, counting, and distributing all tips and gratuities, as well as determining who would be included in the tip pool, and determining the amounts to be received by Plaintiffs Martinez, Diaz, Monter and Pavia and other tipped employees from the tip pool.

82. During their employment, Defendants operated and imposed an unlawful tip pool upon Plaintiffs Martinez, Diaz, Monter and Pavia and other tipped employees in that Defendants frequently permitted Defendant Martinez Cruz – an owner and exempt manager – to participate and share in the distribution of tips and gratuities intended for tipped employees.

83. Beginning in or about 2024 and thereafter, Defendant Martinez Cruz frequently and improperly participated in and received tips and gratuities through Defendants' tip pool in the same amounts as an hourly-paid, tipped employee.

84. As such, during in or about 2024 and thereafter, Defendants, through Defendant Martinez Cruz, unlawfully retained tips and gratuities owed to Plaintiffs Martinez, Diaz, Monter and Pavia and other tipped employees, thereby depriving Plaintiffs Martinez, Diaz, Monter and Pavia and other tipped employees of compensation due to them, in violation of the FLSA, NYLL, NYLL § 193 and New York common law.

85. Throughout their employment, Defendants frequently deducted sums from tips and gratuities – a form of wages – contributed to Defendants' tip pool which were tips and gratuities earned by and owed to Plaintiffs Martinez, Diaz, Monter and Pavia and other tipped employees by improperly retaining and distributing those funds from the tip pool for Defendant Martinez Cruz.

86. During in or about 2024 and thereafter, upon information and belief, Defendants, through Defendant Martinez Cruz, also frequently deducted sums from tips and gratuities – a form of wages – that were intended to be contributed to Defendants' tip pool and that were tips and gratuities earned by and owed to Plaintiffs Martinez, Diaz, Monter and Pavia and other tipped employees as part of the tip pool by improperly retaining those funds for Defendants or Defendants Martinez Cruz, and not including those funds in the tip pool calculations and never distributing those tips and gratuities to anyone through the tip pool.

87. Thus, throughout their employment, Defendants deducted from and/or failed to remit Plaintiffs Martinez's, Diaz's, Monter's and Pavia's and other tipped employees' earned wages that were owed in the form of tips and gratuities, resulting in unlawful deductions, either directly or by separate transaction, to Plaintiffs Martinez's, Diaz's, Monter's and Pavia's and other tipped employees' earned wages that were not required by law or regulation, and were not authorized by Plaintiffs Martinez, Diaz, Monter and Pavia and other tipped employees and were not for their benefit, in violation of NYLL § 193 and New York common law.

88. Moreover, throughout his employment, Defendants frequently required Plaintiffs Martinez, Monter and Pavia to perform duties normally performed by other non-tipped employees. Throughout their employment, Plaintiffs Martinez, Monter and Pavia often performed a substantial amount of non-tipped work during their shifts, which exceeded twenty percent of their time worked during certain shifts and therefore exceeded the amount of time permitted for a tipped-rate employee by applicable law and regulations. Notwithstanding this, Defendants paid Plaintiffs Martinez, Monter and Pavia at their tipped rate of pay for time spent performing non-tipped work.

89. From the beginning of his employment until in or about Summer 2024, Defendants frequently required Plaintiff Diaz to perform duties normally performed by other non-tipped employees. Throughout his employment, Plaintiff Diaz often performed a substantial amount of non-tipped work during his shifts, which exceeded twenty percent of his time worked during certain shifts and therefore exceeded the amount of time permitted for a tipped-rate employee by applicable law and regulations. Notwithstanding this, Defendants paid Plaintiff Diaz at his tipped rate of pay for time spent performing non-tipped work.

90. By way of example, Defendants commonly required Plaintiffs Martinez, Diaz, Monter and Pavia to perform the following non-tipped work while being paid at their tipped rate, including, *inter alia*, cleaning the restaurant, cleaning floors and walls in the restaurant, sweeping the restaurant, sweeping outdoor areas of the restaurant, refilling salt and pepper shakers, refilling condiments and other ingredients, refilling supplies, cutting fruits, preparing toppings, stocking Defendants' refrigerator, performing opening procedures including but not limited to setting up the restaurant and bar areas, preparing napkins and utensils, turning on televisions, and performing closing procedures including but not limited to cleaning the restaurant, refilling condiments and supplies, and counting out money in Defendants' register.

91. Throughout their employment, Defendants paid Plaintiffs Martinez, Diaz, Monter and Pavia their portion of any credit card tips through their paychecks.

92. Throughout their employment, Defendants paid Plaintiffs Martinez, Diaz, Monter and Pavia their portion of any cash tips in cash.

93. Throughout their employment, Defendants inaccurately recorded the amount of tips and gratuities received by Plaintiffs Martinez, Diaz, Monter and Pavia.

94. Moreover, throughout their employment, Defendants inaccurately recorded or entirely failed to record the amount of cash tips and gratuities received by Plaintiffs Martinez, Diaz, Monter and Pavia.

95. Despite these unlawful practices, throughout their employment, Defendants paid Plaintiffs Martinez, Diaz, Monter and Pavia and other tipped employees at a reduced tipped rates that were below the applicable statutorily mandated minimum wage rates and overtime rates, in violation of the NYLL.

96. Despite being required to work in excess of forty hours during many workweeks, Defendants paid Plaintiffs Martinez, Diaz, Monter and Pavia at incorrect overtime rates of pay by paying them at rates of pay that were below the statutorily required overtime rate of one and one-half times the applicable minimum wage rate or their proper regular hourly rate of pay, whichever is greater, for their hours worked in excess of forty during their workweeks, at least for those hours that Plaintiffs Martinez, Diaz, Monter and Pavia received any compensation.

97. Throughout their employment, Defendants commonly failed to pay Plaintiffs Martinez, Diaz, and Pavia at any rate of pay for several of their hours worked during their workweeks, including during their first forty hours of work or where they worked more than forty hours during a workweek, thereby failing to pay them the minimum wage, their agreed upon rates

of pay, and overtime rates of pay for those hours worked, in violation of the FLSA, NYLL, NYLL § 193 and New York common law.

98. Thus, throughout their employment, Defendants failed to pay each of the Plaintiffs at their statutorily-mandated overtime rates of pay of at least one and one-half times the applicable minimum wage rate or their proper regular hourly rates of pay, whichever is greater, for their hours worked in excess of forty during many of their workweeks, in violation of the FLSA and NYLL.

99. Throughout their employment, Defendants deducted from and/or failed to remit several hours of Plaintiffs Martinez's, Diaz's, and Pavia's earned wages at any rate of pay that were owed during certain workweeks, resulting in unlawful deductions, either directly or by separate transaction, to Plaintiffs Martinez's, Diaz's, and Pavia's earned wages that were not required by law or regulation, and were not authorized by Plaintiffs Martinez, Diaz, and Pavia and were not for their benefit, in violation of NYLL § 193 and New York common law.

100. Throughout their employment, Defendants failed to maintain records of Plaintiffs' hours worked during each workday or each workweek.

101. Throughout their employment, despite utilizing an electronic timekeeping system, Defendants informed Plaintiff Flores and other employees that Defendants deleted their time records for their employees at the end of each workweek.

102. Throughout their employment, Plaintiffs also worked certain daily shifts that exceeded ten hours per day from its start to its finish. However, Defendants failed to pay Plaintiffs spread-of-hours compensation of one additional hour at the applicable minimum wage rate for each workday that exceeded ten hours, in violation of the NYLL.

103. Throughout their employment, Defendants failed to provide written notice to Plaintiffs upon their hire in their primary language – or at all – of their rates of pay and other information required by NYLL § 195(1).

104. Throughout their employment, Defendants failed to furnish Plaintiffs with accurate statements of their wages earned, including, *inter alia*, their correct regular and overtime rates of pay, their correct amount of regular and overtime hours worked, their spread of hours compensation, and their correct amount of tips and gratuities received, their correct amount of gross wages, net wages, deductions and allowances, for each pay period as required by NYLL § 195(3).

105. By failing to provide Plaintiffs with a wage notice meticulously detailing Plaintiffs' hourly rates upon their hire, as well as by failing to record their actual amount of tips and gratuities received for each workweek, as required by NYLL §§ 195(1) and (3) and the related New York State Department of Labor Regulations, and by failing to provide other accurate and/or complete information under these requirements, such as failing to provide accurate wage statements (i.e. paystubs), Defendants caused actual and concrete harm to Plaintiffs, who were unable to determine whether they had been underpaid for their proper straight-time, regular hourly wages, overtime compensation, spread of hours compensation, or been correctly paid for all tips and gratuities earned, throughout their employment.

106. Because Plaintiffs worked without the accurate and complete information required by NYLL §§ 195(1) and (3), Plaintiffs were unable to determine the precise amount of wages, tips and gratuities that they were entitled to receive, assess the manner in which their wages were calculated, and determine that they had been underpaid every workweek, which caused Plaintiffs to suffer unpaid wages throughout their employment and causing them to suffer underpayments

longer than they would have if a compliant – or any – wage notice and/or compliant or accurate wage statements had been provided.

107. With no way to know how much Plaintiffs should have been making or receiving in wages, tips and gratuities, Plaintiffs worked throughout their employment without discovering how much they had been underpaid nearly every week, which denied Plaintiffs not only the time-value of that money, but also resulted in continued actual underpayments.

108. During their employment, Defendants' employees, including Plaintiff Flores, objected to Defendants' failure to pay their employees at the proper overtime rates of pay as required by the FLSA and NYLL.

109. In response, Defendants, including through Defendant Martinez Cruz, rejected these complaints and informed Plaintiff Flores and Monter, and other employees that Defendants do not pay overtime rates of pay and Defendants instead pay employees at their straight-time, regular hourly rates of pay only.

110. In response to one such complaint, Defendants informed their employees that they do not pay overtime rates of pay because as it costs Defendants "too much money."

111. In response to these complaints, Defendants failed to take any action to remedy their unlawful wage practices, and instead continued to willfully and intentionally refuse to pay proper overtime wages to Defendants' employees, including the Plaintiffs, Class Members and FLSA Collective Action Members, in violations of the FLSA and NYLL.

112. Additionally, several of Defendant 45 Stone Street Venture Ltd.'s owners have been involved in multiple prior litigations since at least 2014 relating to similar issues as those asserted herein, which included various wage and hour allegations under the FLSA and NYLL.

113. Defendants Noel McDermott and Ronan A. Downs (sued incorrectly therein as Ronald Doe), along with 81 Pearl Street Venture Ltd. – a restaurant in which Defendants Noel McDermott, Ronan A. Downs and Eamonn Massey are owners – were involved in prior litigation relating to similar issues as those asserted herein. Specifically, the matter of *Mario Ramires v. 81 Pearl Street Venture Ltd. d/b/a Beckett's, et al.*, Docket No. 14-cv-02795 (JMF) (S.D.N.Y.), which was filed on April 14, 2014, asserted claims against 81 Pearl Street Venture Ltd. and Defendants Noel McDermott and Ronan A. Downs for, *inter alia*, for their failure to pay a dishwasher and kitchen employee his lawful overtime compensation under the FLSA and NYLL, minimum wage compensation under the FLSA and NYLL, spread of hours compensation under the NYLL, failure to provide a compliant wage notice upon his hire under NYLL § 195(1), and failure to furnish accurate wage statements for each pay period under NYLL § 195(3). Thus, Defendants Noel McDermott's, Ronan A. Downs' and Eamonn Massey's violations of the applicable wage and hour laws – along with the violations of Defendant 45 Stone Street Venture Ltd. that they each own and operate – were willful, intentional and did not occur as part of a good faith effort to comply with the applicable wage and hour laws.

114. Defendant Ronan A. Downs, along with 85 Pearl Street Venture Ltd. – a restaurant in which Ronan A. Downs was an owner – was involved in prior litigation relating to similar issues as those asserted herein. Specifically, the matter of *Aixa Mercado and Chablis Quarterman v. 85 Pearl Street Venture Ltd. d/b/a Stone Street Tavern*, Docket No. 15-cv-05049 (AT) (S.D.N.Y.), which was filed on June 29, 2015, asserted claims against 85 Pearl Street Venture Ltd. and Defendant Ronan A. Downs for, *inter alia*, for their failure to pay two servers and other tipped employees their lawful overtime compensation under the FLSA and NYLL, minimum wage compensation under the FLSA and NYLL, spread of hours compensation under the NYLL, failure

to provide a compliant tip credit notice under the FLSA and NYLL, for retaining and/or failing to remit a portion of the tips and gratuities owed to tipped employees, for improperly permitting two managers to retain and share in the tips and gratuities intended for tipped employees, failure to provide a compliant wage notice upon their hire under NYLL § 195(1), and failure to furnish accurate wage statements for each pay period under NYLL § 195(3). Thus, Defendant Ronan A. Downs' violations of the applicable wage and hour laws – along with the violations of Defendant 45 Stone Street Venture Ltd. that he owns and operates – were willful, intentional and did not occur as part of a good faith effort to comply with the applicable wage and hour laws.

115. Defendants willfully disregarded and purposefully evaded record keeping requirements of the FLSA and the NYLL by failing to maintain accurate records of the wages earned by and paid to Plaintiffs, failing to maintain accurate records of Plaintiffs' hours worked, failing to pay Plaintiffs in accordance with their actual hours worked, failing to pay certain hours worked at their agreed upon rates of pay under the NYLL, failing to pay wages at least equal to the NYLL minimum wage rate of pay, failing to pay proper overtime wages in accordance with their hours worked, failing to pay spread of hours compensation under the NYLL, permitting its owner and manager Defendant Martinez Cruz to retain tips and gratuities from the employee tip pool earned by and owed to Plaintiffs Martinez, Diaz, Monter and Pavia and other tipped employees, intentionally failing to accurately record tips and gratuities received by Plaintiffs Martinez, Diaz, Monter and Pavia and other tipped employees, unlawfully deducting and/or failing to remit earned wages in the form of hourly wages, tips and gratuities to Plaintiffs, failing to provide compliant tip credit notices under the NYLL, failing to provide a compliant wage notice upon their hire under the NYLL, failing to provide accurate wage statements for each pay period under the NYLL, and by continuing to engage in these unlawful wage violations even after being

confronted by employee complaints, including by Plaintiff Flores and Monter, asserting allegations of wage violations and after facing and resolving multiple prior lawsuits asserting similar wage violations under the FLSA and NYLL.

116. Defendants treated and paid Plaintiffs, Class Members and FLSA Collective Action Members in the same or similar manner pursuant to Defendants' corporate-wide payroll and employment practices.

117. Plaintiffs, Class Members and FLSA Collective Action Members suffered the same or similar harms as a result of Defendants' corporate-wide payroll and employment practices.

## COLLECTIVE ACTION ALLEGATIONS

118. At all times relevant, Plaintiffs and other FLSA Collective Action Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decisions, plans and common policies, programs, practices, procedures, protocols, routines, and rules willfully failing to pay them overtime pay for hours worked in excess of forty (40) hours each week and unlawfully retaining tips and gratuities under the FLSA.

119. Upon information and belief, there are many current and former employees who are similarly situated to the Plaintiffs, who have been underpaid in violation of the FLSA. The named Plaintiffs are representative of those other workers and are acting on behalf of the Defendants' current and former employees' interests as well as their own interests in bringing this action.

120. Plaintiffs seek to proceed as a collective action with regard to the First Claim for Relief, pursuant to 29 U.S.C. §216(b) on behalf of themselves, individually, and the following similarly situated employees:

> All non-exempt persons who are currently, or have been employed by the Defendants as a non-exempt, hourly paid employee and/or as a non-exempt, hourly paid, tipped employee, including but not limited to dishwashers, cooks, kitchen workers, bartenders, servers, food runners, or bussers, and/or in a similarly situated position, at any time during the three (3) years prior to the filing of their respective consent forms.

121. The First and Second Claims for Relief are properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. These similarly situated employees should be notified of and allowed to opt-into this action pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, persons similarly situated to the Plaintiffs, who have been unlawfully deprived of overtime pay and have been subjected to Defendants unlawfully retaining tips and gratuities in violation of the FLSA, will be unable to secure compensation to which they are entitled and which has been unlawfully withheld from them by the Defendants.

## CLASS ACTION ALLEGATIONS

122. Plaintiffs bring the Third through Thirteenth Claims for Relief on behalf of themselves, individually, and a class of persons under Fed. R. Civ. P. 23 consisting of all persons who are currently, or have been, employed by the Defendants as a non-exempt, hourly paid employee and/or as a non-exempt, hourly paid, tipped employee, including but not limited to dishwashers, cooks, kitchen workers, bartenders, servers, food runners, or bussers, and/or in a similarly situated position at any time during the six (6) years prior to the filing of the original Complaint through the date of judgment (hereinafter referred to as the "Class" or the "Class Members").

123. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the

positions held, and rates of pay for the Class Members may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

124. The proposed Class is so numerous such that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, upon information and belief, there are more than forty (40) individuals who are currently, or have been, employed by the Defendants as a covered Class Member at any time during the six (6) years prior to the filing of the original Complaint.

125. Defendants have acted and/or have refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

126. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

(a) Whether Defendants failed and/or refused to pay the Plaintiffs and Class Members premium overtime compensation at the correct rates of pay for hours worked in excess of forty hours in a single workweek;

(b) Whether Defendants failed and/or refused to pay the Plaintiffs and Class Members the applicable minimum wage rates of pay for their hours worked;

(c) Whether Defendants failed and/or refused to pay the Plaintiffs Flores, Martinez, Diaz, and Pavia and Class Members their agreed upon rates of pay for their hours worked;

(d) Whether Defendants failed and/or refused to pay the Plaintiffs and Class Members spread of hours compensation for each workday where the start and end of their workday exceeded ten hours;

(e) Whether Defendants unlawfully made deductions to Plaintiffs' and Class Members' wages, tips and gratuities, either directly or by separate transactions, for the benefit of Defendants and/or without authorization of Plaintiffs or the Class Members;

(f) Whether Defendants failed and/or refused to pay, retained and/or failed to remit tips and gratuities due to Plaintiffs Martinez, Diaz, Monter and Pavia and the Class Members, in violation of the NYLL and/or New York common law;

(g) Whether Defendants' pay practices violated the New York common law, in the form of unjust enrichment, with respect to the Plaintiffs and Class Members;

(h) Whether Defendants' pay practices violated the New York common law, in the form of quantum meruit, with respect to the Plaintiffs and Class Members;

(i) Whether Defendants' pay practices violated the New York common law, in the form of conversion, with respect to the Plaintiffs and Class Members;

(j) Whether Defendants failed to furnish Plaintiffs Martinez, Diaz, Monter and Pavia and the Class Members with a compliant notice informing them that they would be paid at a tipped rate, within the requirements set forth under the NYLL and its applicable regulations, and/or whether such notice was provided in their primary language;

(k) Whether Defendants' pay practices constitute an unlawfully administered tip pool arrangement, invalidating Defendants' right to a take a tip credit against hourly wages;

(l) Whether Defendants' owner and/or manager participated in and/or unlawfully retained tips and gratuities from the tip pool due to Plaintiffs Martinez, Diaz, Monter and Pavia and the Class Members;

(m) Whether Defendant Martinez Cruz participated in and/or unlawfully received tips and gratuities from the tip pool due to Plaintiffs Martinez, Diaz, Monter and Pavia and the Class Members;

(n) Whether Defendants failed to timely pay or remit tips and gratuities and/or other wages to Plaintiffs Martinez, Diaz, Monter and Pavia and the Class Members;

(o) Whether Defendants failed to furnish the Plaintiffs and Class Members with a compliant notice of wage rate upon their hire and/or whether such notice was provided in their primary language;

(p) Whether Defendants failed to furnish the Plaintiffs and Class Members with accurate wage statements for each pay period;

(q) Whether Defendants' general practice of failing and/or refusing to pay Plaintiffs and Class Members overtime pay, minimum wage compensation, wages at their agreed upon rates of pay, spread of hours compensation, retaining of tips and gratuities, and unlawfully deducting and/or retaining wages, tips and gratuities, was done willfully and/or with reckless disregard of the state wage and hour laws;

(r) Whether Defendants took any active steps to ascertain and comply with the state wage and hour laws regarding their payment of wages to Plaintiffs and Class Members;

(s) Whether Defendants failed to keep and maintain true and accurate payroll records, including, *inter alia*, recording all hours worked, compensation received, and amounts of tips and gratuities received, for the Plaintiffs and Class Members;

(t) Whether Defendants' policies, practices, programs, procedures, protocols, and plans regarding keeping and maintaining payroll records complied with the law; and

(u) What was the nature and extent of the Class-wide injury and the appropriate measure of damages for the class.

127. Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All of the Class Members were subject to the same corporate practices of Defendants. Defendants' corporate-wide policies and practices affected and harmed all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiffs and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

128. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.

129. Plaintiffs have retained counsel competent and experienced in class actions, wage and hour litigation, and employment litigation.

130. A class action is superior to other available methods for the fair and efficient adjudication of litigation, particularly in the context of wage and hour litigations like the present action, where individual Plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate Defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant savings of these costs.

131. The Class Members have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures. Although the relative damages suffered by individual Rule 23 Class Members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that may result in inconsistent judgments about Defendants' practices.

132. Furthermore, current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Amended Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing those risks.

**FIRST CLAIM FOR RELIEF**
**(FAIR LABOR STANDARDS ACT – UNPAID OVERTIME WAGES)**

133. Plaintiffs and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

134. Defendants employed Plaintiffs and persons similarly situated to Plaintiffs for workweeks longer than forty (40) hours and willfully failed to compensate the Plaintiffs and persons similarly situated to Plaintiffs for their time worked in excess of forty (40) hours per week at a rate of at least one and one-half times the applicable minimum wage or their proper regular hourly rates or pay, whichever is greater, in violation of the FLSA.

135. Defendants' violations of the FLSA have been willful and intentional.

136. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

137. As a result of Defendants' unlawful acts, Plaintiffs and persons similarly situated to Plaintiffs with respect to Defendants' violations of the FLSA are entitled to recover overtime compensation in amounts to be determined at trial, liquidated damages, attorneys' fees and costs of this action.

**SECOND CLAIM FOR RELIEF**
**(UNLAWFULLY RETAINED TIPS AND GRATUITIES UNDER THE FLSA)**

138. Plaintiffs and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

139. Pursuant to 29 U.S.C. § 203(m), "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

140. Additionally, according to Fact Sheet #15 Tipped Employees Under the Fair Labor Standards Act (FLSA), published by U.S. Department of Labor ("DOL" hereinafter), Wage and Hour division, "[r]egardless of whether an employer takes a tip credit, the FLSA prohibits employers from keeping any portion of employees' tips for any purpose, whether directly or through a tip pool. An employer may not require an employee to give their tips to the employer, a supervisor, or a manager, even where a tipped employee receives at least the federal minimum wage (currently $7.25) per hour in wages directly from the employer and the employer takes no tip credit."

141. By setting and maintaining a policy and/or practice of improperly withholding all or portions of tips and gratuities meant to be paid to Plaintiffs Martinez, Diaz, Monter and Pavia and any FLSA Collective Action Plaintiff who opts-into this action, Defendants willfully and knowingly violated the FLSA.

142. Defendants failed to maintain proper employment records as required by the FLSA.

143. Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

144. As a result of the unlawful acts of the Defendants, Plaintiffs Martinez, Diaz, Monter and Pavia and any FLSA Collective Action Plaintiff who opts-into this action have been deprived of tips and gratuities in amounts to be determined at trial.

145. Based on the foregoing, Plaintiffs Martinez, Diaz, Monter and Pavia and any FLSA Collective Action Plaintiff who opts-into this action are also entitled to liquidated damages,

attorneys' fees, and their costs and disbursements in this action for Defendants' violations of the FLSA.

**THIRD CLAIM FOR RELIEF**
**(NEW YORK LABOR LAW – UNPAID OVERTIME WAGES)**

146. Plaintiffs, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

147. Defendants employed Plaintiffs, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action, for workweeks longer than forty hours and failed to compensate the Plaintiffs, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action, for hours worked in excess of forty hours per week at a rate of at least one and one-half times the applicable minimum wage or their proper regular hourly rates of pay, whichever is greater, in violation of the NYLL.

148. By Defendants' failure to pay Plaintiffs, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action, their correct overtime wages for hours worked in excess of forty hours per week, Defendants violated the NYLL, Article 19, § 650 *et seq.*, and the supporting New York State Department of Labor Regulations, including 12 N.Y.C.R.R. § 146.

149. Defendants' violations of the NYLL have been willful and intentional.

150. Due to Defendants' violations of the NYLL, Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, are entitled to recover from Defendants unpaid overtime wages, liquidated damages, attorneys' fees, costs of this action, and interest as permitted by law.

**FOURTH CLAIM FOR RELIEF**
**(NEW YORK LABOR LAW – MINIMUM WAGES)**

151. Plaintiffs, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

152. Defendants employed Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, yet willfully failed to pay Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, the applicable minimum wage rates for all hours worked, in violation of the NYLL and the supporting New York State Department of Labor Regulations, including 12 N.Y.C.R.R. § 146.

153. Defendants' violations of the NYLL have been willful and intentional.

154. Due to Defendants' violations of the NYLL, Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, are entitled to recover from Defendants unpaid minimum wage compensation, liquidated damages, attorneys' fees, costs of this action, and interest as permitted by law.

**FIFTH CLAIM FOR RELIEF**
**(NEW YORK LABOR LAW – FAILURE TO PAY WAGES DUE)**

155. Plaintiffs, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

156. NYLL §§ 190, 191, 198 and 663(1) require that employers pay wages to their employees in accordance with their agreed terms of employment.

157. Defendants failed to compensate Plaintiffs Flores, Martinez, Diaz, and Pavia, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action at their regular rate of pay for certain hours that they worked in accordance with their agreed terms of employment.

158. Defendants' violations of the NYLL have been willful and intentional.

159. Due to Defendants' violations of the NYLL, Plaintiffs Flores, Martinez, Diaz, and Pavia, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action are entitled to recover for all hours worked for Defendants but for which Defendants did not provide compensation at their regular rates of pay.

160. Due to Defendants' violations of the NYLL, Plaintiffs Flores, Martinez, Diaz, and Pavia, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action are also entitled to liquidated damages, attorneys' fees, costs, and interest for Defendants' failure to pay wages in accordance with their agreed terms of employment.

## SIXTH CLAIM FOR RELIEF
## (NEW YORK LABOR LAW – SPREAD OF HOURS VIOLATION)

161. Plaintiffs, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

162. Defendants failed to pay Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, one additional hour of pay at the basic minimum wage rate for each day their spread of hours exceeded ten in violation of NYLL § 650 *et seq.* and 12 NYCRR § 146-1.6.

163. Defendants' failure to pay spread-of-hours compensation was willful and intentional.

164. For the foregoing reasons, Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, are entitled to recover unpaid spread of hours compensation, liquidated damages, attorneys' fees, costs of this action and interest as permitted by law.

**SEVENTH CLAIM FOR RELIEF**
**(NEW YORK LABOR LAW – UNLAWFULLY RETAINED TIPS AND GRATUITIES)**

165. Plaintiffs, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

166. Pursuant to NYLL § 196-d, an employer is not permitted to "demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

167. Plaintiffs Martinez, Diaz, Monter and Pavia, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, performed work for the benefit of Defendants, at Defendants' behest, for which they received compensation partially through tips and gratuities.

168. However, Defendants retained and/or failed to remit, directly and indirectly, a portion of the tips and gratuities intended for the Plaintiffs Martinez, Diaz, Monter and Pavia, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, and they have not been paid those tips and gratuities as Defendants have unlawfully retained and/or failed to remit those tips and gratuities, in violation of NYLL § 196-d.

169. Defendants' violations of the NYLL have been willful and intentional.

170. Due to Defendants' violations of the NYLL, Plaintiffs Martinez, Diaz, Monter and Pavia, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, are

entitled to their unpaid tips and gratuities, liquidated damages, attorneys' fees, costs of this action, and interest as permitted by law.

**EIGHTH CLAIM FOR RELIEF**
**(VIOLATION OF NEW YORK LABOR LAW § 193)**

171. Plaintiffs, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

172. NYLL § 193 prohibits employers from taking any deductions from wages, except as required by law or regulation, or authorized by the employee for the employee's benefit.

173. Based on the forgoing, Defendants engaged in multiple forms of unlawful deductions to Plaintiffs', Class Members's and any FLSA Collective Action Plaintiff who opts-into this action's wages, tips and gratuities, directly and/or by separate transactions, in violation of NYLL § 193 and the supporting New York State Department of Labor Regulations.

174. Thus, Defendants commonly made deductions to Plaintiffs', Class Members's and any FLSA Collective Action Plaintiff who opts-into this action's wages, tips and gratuities, solely for the benefit of the Defendants, without Plaintiffs', Class Members's and any FLSA Collective Action Plaintiff who opts-into this action's authorization, and not for the benefit of the Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, in violation of NYLL § 193 and the supporting New York State Department of Labor Regulations.

175. Defendants' violations of the NYLL have been willful and intentional.

176. Due to Defendants' violations of the NYLL, Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action are entitled to damages in an amount to be determined at trial, liquidated damages, attorneys' fees, costs of this action, and interest as permitted by law.

**NINTH CLAIM FOR RELIEF**
**(UNJUST ENRICHMENT)**

177. Plaintiffs, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

178. Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action performed work for the benefit of Defendants, at Defendants' behest, for which some of them received compensation partially through tips and gratuities – a form of wages – and all received compensation through an hourly rate of pay.

179. However, Defendants retained and/or failed to remit their hourly wages for certain hours worked at any rate of pay and retained and/or failed to remit portion of the tips and gratuities intended for the Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, thereby withholding their compensation in the form of earned wages, tips, gratuities and/or money due and owing to them.

180. Due to Defendants' conduct in violation of New York common law, Defendants were enriched at the expense of Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action and it is against equity and good conscience to permit Defendants to retain what is sought to be recovered.

181. Defendants violated New York common law against Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action by engaging in willful, wanton, and/or reckless conduct and/or conduct in conscious disregard of Plaintiffs', Class Members' and any FLSA Collective Action Plaintiff who opts-into this action's rights, and Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action are therefore entitled to an award of punitive damages under New York law.

**TENTH CLAIM FOR RELIEF**
**(QUANTUM MERUIT)**

182. Plaintiffs, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

183. Plaintiffs Flores, Martinez, Diaz, and Pavia, Class Members and any FLSA Collective Action Plaintiff who opts into this action, performed valuable services for Defendants in good faith, at Defendants' behest, which were accepted by Defendants.

184. Plaintiffs Flores, Martinez, Diaz, and Pavia, Class Members and any FLSA Collective Action Plaintiff who opts into this action, performed valuable services for Defendants with the expectation that they would be compensated for their work.

185. Defendants failed to compensate Plaintiffs Flores, Martinez, Diaz, and Pavia, Class Members and any FLSA Collective Action Plaintiff who opts into this action, at their regular rate of pay or any rate of pay for certain hours that they worked for the Defendants.

186. Plaintiffs Flores, Martinez, Diaz, and Pavia, Class Members and any FLSA Collective Action Plaintiff who opts into this action, are entitled to the recovery of the reasonable value of the services that they provided to Defendants, Defendants were enriched at the expense of the Plaintiffs Flores, Martinez, Diaz, and Pavia, Class Members and any FLSA Collective Action Plaintiff who opts into this action, and it is against equity and good conscience to permit Defendants to retain what is sought to be recovered.

187. As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiffs Flores, Martinez, Diaz, and Pavia, Class Members and any FLSA Collective Action Plaintiff who opts into this action, have sustained and are entitled to recover damages, costs of this action, and interest as permitted by law.

188. Defendants violated New York common law against Plaintiffs Flores, Martinez, Diaz, and Pavia, Class Members and any FLSA Collective Action Plaintiff who opts-into this action by engaging in willful, wanton, and/or reckless conduct and/or conduct in conscious disregard of Plaintiffs Flores', Martinez's, Diaz's, and Pavia's, Class Members' and any FLSA Collective Action Plaintiff who opts-into this action's rights, and Plaintiffs Flores, Martinez, Diaz, and Pavia, Class Members and any FLSA Collective Action Plaintiff who opts-into this action are therefore entitled to an award of punitive damages under New York law.

**ELEVENTH CLAIM FOR RELIEF**
**(CONVERSION)**

189. Plaintiffs, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

190. Based on the forgoing, Defendants engaged in multiple forms of unlawful conversion of Plaintiffs', Class Members' and any FLSA Collective Action Plaintiff who opts-into this action's property, including, but not limited to, retaining and/or failing to remit earned wages, tips, gratuities and/or money due to Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action.

191. Defendants engaged in this conduct and have retained and/or failed to remit to Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action their earned wages, tips, gratuities and/or money without Plaintiffs', Class Members' and any FLSA Collective Action Plaintiff who opts-into this action's authorization and without their consent.

192. Based on the foregoing, Defendants' conduct – including, not limited to retaining and/or failing to remit Plaintiffs', Class Members' and any FLSA Collective Action Plaintiff who opts-into this action's earned wages, tips, gratuities and/or money – amounts to nothing less than

blatant theft of Plaintiffs', Class Members' and any FLSA Collective Action Plaintiff who opts-into this action's earned wages, tips, gratuities and/or money.

193. Based on the foregoing, Defendants intentionally and without authority, assumed or exercised control over Plaintiffs', Class Members' and any FLSA Collective Action Plaintiff who opts-into this action's personal property, in the form of earned wages, tips, gratuities and/or money, that belonged to Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, and that did not belong to Defendants, and interfered with Plaintiffs', Class Members' and any FLSA Collective Action Plaintiff who opts-into this action's rights of possession.

194. Based on the foregoing, Defendants intentionally engaged in conversion by taking possession of and/or failing to remit Plaintiffs', Class Members' and any FLSA Collective Action Plaintiff who opts-into this action's property in the form of earned wages, tips, gratuities and/or money, and by permanently impeding Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action from using their earned wages, tips, gratuities and/or money, which they has the exclusive rights to use.

195. As a result of Defendants' unlawful conduct, Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action are entitled to all damages, the value of all property, earned wages, tips, gratuities and/or money converted to Defendants' possession and/or use, out of pocket costs, other incidental and consequential damages, costs of this action and interest as permitted by law.

196. Defendants violated New York common law against Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action by engaging in willful, wanton, and/or reckless conduct and/or conduct in conscious disregard of Plaintiffs', Class Members' and

any FLSA Collective Action Plaintiff who opts-into this action's rights, and Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action are therefore entitled to an award of punitive damages under New York law.

**TWELFTH CLAIM FOR RELIEF**
**(VIOLATION OF NEW YORK LABOR LAW § 195(1))**

197. Plaintiffs, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

198. Defendants failed to provide Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, with a written notice upon their hire in their primary language – or at all – regarding, *inter alia*, their rate of pay, the basis of their rate of pay, the employee's regular pay day, the name, address and telephone number of the employer, and other information required by NYLL § 195(1).

199. Due to Defendants' failure to provide Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, with the notice required by NYLL § 195(1), Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, are entitled to statutory damages, attorneys' fees and costs of this action.

**THIRTEENTH CLAIM FOR RELIEF**
**(VIOLATION OF NEW YORK LABOR LAW § 195(3))**

200. Plaintiffs, Class Members, and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

201. Defendants failed to provide Plaintiffs, Class Members and any FLSA Collective Action Plaintiff, with accurate statements of their wages earned, including, *inter alia*, their correct

regular and overtime rates of pay, their correct amount of regular and overtime hours worked, their spread of hours compensation, and their correct amount of tips and gratuities received, their correct amount of gross wages, net wages, deductions and allowances, for each pay period as required by NYLL § 195(3).

202. Due to Defendants' failure to provide Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, with accurate wage statements as required by NYLL § 195(3), Plaintiffs, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, are entitled to statutory damages, attorneys' fees and costs of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, Class Members and FLSA Collective Action Plaintiffs pray for the following relief:

i. Issuing an order restraining Defendants from any retaliation against Plaintiffs, Class Members and FLSA Collective Action Plaintiffs for participation in any form in this litigation;

ii. Issuing a declaratory judgment that the practices complained of in this Amended Complaint are unlawful under the FLSA, 29 U.S.C. § 201 *et seq.* and supporting regulations and the NYLL, Article 19, § 650 *et seq.*, and the supporting New York State Department of Labor Regulations, and under New York common Law;

iii. Designating this action as an FLSA collective action on behalf of the Plaintiffs and FLSA Collective Action Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Collective Action Plaintiffs apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action

by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

iv. Certifying this action a class action pursuant to Fed. R. Civ. P. 23;

v. Awarding unpaid overtime wages, any unpaid wages in the form of unpaid tips and gratuities intended to be paid to and earned by Plaintiffs, and any unlawfully retained, deducted, withheld and/or diverted wages, tips and/or gratuities, and an additional and equal amount as liquidated damages pursuant to the FLSA, 29 U.S.C. § 201 *et seq.* and the supporting United States Department of Labor regulations;

vi. Awarding unpaid wages, including overtime wages, minimum wages, wages at their agreed upon rates of pay, unpaid or retained tips and gratuities, spread of hours wages, unlawfully deducted wages, tips and/or gratuities from earned wages, and any other forms of compensation, and an additional and equal amount as liquidated damages, pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

vii. Awarding damages pursuant to NYLL §§ 195(1), 195(3), 198;

viii. Awarding damages relating to the unlawful violations of the New York common law with respect to unjust enrichment, quantum meruit and conversion;

ix. Awarding punitive damages as permitted by law;

x. Awarding pre- and post-judgment interest as permitted by law;

xi. Awarding attorneys' fees incurred in prosecuting this action;

xii. Awarding all costs and expenses incurred in prosecuting this action; and

xiii. Granting such other and further relief as this Court deems just and proper.

Dated: Hauppauge, New York
July 29, 2026

ROMERO LAW GROUP PLLC
*Attorneys for Plaintiffs*
490 Wheeler Road, Suite 277
Hauppauge, New York 11788
Tel.: (631) 257-5588

By: ______________________________
DAVID D. BARNHORN, ESQ.